472 A.2d 1145

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Christophe BRIGGMAN a/k/a Christopher Briggman.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1983.

Filed March 9, 1984.

Richard P. Myers, Assistant District Attorney, Philadelphia, for Com., appellant.

Maureen K. Rowley, Assistant Public Defender, Philadelphia, for appellee.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Christopher Briggman was tried non-jury and was found guilty of theft by receiving stolen property [1] and unauthorized use of a motor vehicle [2] following an arrest while driving a stolen automobile on the streets of Philadelphia. The trial court granted Briggman's motion in arrest of judgment, holding that a pre-trial order granting the Commonwealth an extension of time under Pa.R.Crim.P. 1100(c) had been entered in error and that Briggman's trial had not been held timely. The Commonwealth appealed. We reverse.

Briggman was arrested and a complaint was filed on May 10, 1980. The Rule 1100 run date, therefore, was November 6, 1980.[3] Trial was listed for October 20, 1980. On that day the defense requested a continuance for the purpose of conducting additional investigation and expressly waived the time requirements of Rule 1100 until December 30, 1980. The case was relisted for trial on December 23. On that date, however, Briggman failed to appear for trial, and a bench warrant was issued for his arrest. On December 29, 1980, the Commonwealth filed a timely petition for an extension of time within which to commence trial; and a

1. 18 Pa.C.S. § 3925.

2. 18 Pa.C.S. § 3928.

3. Briggman, who had been released on bail, failed to appear for a preliminary hearing on May 15, and a bench warrant for his arrest was not served until May 23. On July 15, 1980, Briggman also failed to appear for arraignment and was not found until August 1. The defense concedes that these periods were excludable and resulted in an adjusted run date of December 1. Because of subsequent events, however, these facts do not figure in the calculations on which our decision turns.

hearing thereon was set for January 26, 1981. Before the hearing was held, Briggman had been found. On January 13, 1981, the bench warrant was withdrawn, bail was increased, and a new trial date was set for February 26, 1981. After hearing on January 26, 1981, the time for commencement of trial was extended until February 24, 1981, and the trial date was advanced to February 20. On February 20, 1981, the Commonwealth and the defendant were ready to proceed, but the case was not reached. Trial, therefore, was rescheduled for April 27, 1981. The Commonwealth then filed a second extension petition, which was heard on March 26, 1981 before the Honorable Maurice Sporkin. At this hearing it was stipulated that on February 20, 1981, when the case had not been reached, the District Attorney had requested and received the earliest possible trial date, i.e., April 27, 1981. It was also stipulated that on February 20, 1981, a case having a run date of February 27, 1981 had been called for trial prior to the instant case. As a result of this hearing, Judge Sporkin granted an extension until April 28, 1981. Trial was held and Briggman was found guilty on April 27, 1981 before the Honorable Marvin R. Halbert. Subsequently, Judge Halbert granted a defense motion in arrest of judgment because, in his judgment, Judge Sporkin had erred in finding that the Commonwealth had exercised due diligence in bringing the defendant to trial. He concluded that the February 20th calling of a case having a run date three days later than the instant case was inconsistent with the exercise of due diligence and required that Briggman be discharged.

■ It is by now well settled that a court may grant an extension of time to commence trial under Pa.R.Crim.P. 1100(c) where judicial delay prevents the Commonwealth from bringing a defendant to trial within the mandatory period despite its due diligence.

"[T]he trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the 'due diligence' of the prosecution, and (2) the certification that trial is scheduled for the earliest date consistent with the court's

business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and reasons why the delay cannot be avoided."
*Commonwealth v. Mayfield,* 469 Pa. 214, 222, 364 A.2d 1345, 1349–1350 (1976). See also: *Commonwealth v. Selig,* 317 Pa.Super. 533, 538, 464 A.2d 450, 452 (1983); *Commonwealth v. Harris,* 315 Pa.Super. 544, 551, 462 A.2d 725, 729 (1983); *Commonwealth v. Lamb,* 309 Pa.Super. 415, 422, 455 A.2d 678, 682 (1983).

In holding that the circumstances of the instant case demonstrated a lack of due diligence, Judge Halbert relied upon decisions of the Superior Court which held that a case of unavoidable judicial delay cannot be made out in the absence of a record showing that the defendant's case "could not have been scheduled for trial ahead of other cases which did not suffer similar Rule 1100 problems." Primary among these decisions was *Commonwealth v. Crowley,* 281 Pa.Super. 26, 421 A.2d 1129 (1980). Others included *Commonwealth v. Bytheway,* 290 Pa.Super. 148, 434 A.2d 173 (1981); and *Commonwealth v. Levitt,* 287 Pa.Super. 115, 429 A.2d 1126 (1981). See also: *Commonwealth v. Lamb, supra; Commonwealth v. Ryan,* 306 Pa.Super. 159, 452 A.2d 264 (1982). Contra: *Commonwealth v. Suggs,* 289 Pa.Super. 44, 432 A.2d 1042 (1981).

More recently, however, the Supreme Court has disapproved this language in reversing the Superior Court's decision in *Commonwealth v. Crowley, supra.* In *Commonwealth v. Crowley,* 502 Pa. 393, 466 A.2d 1009 (1983), the Supreme Court held that *"Commonwealth v. Mayfield* does not require the Commonwealth to exhaust the possibility of rearranging overcrowded dockets to accommodate the Rule 1100 run dates regardless of that rearrangement's effect on other matters." *Id.,* 502 Pa. at 395, 466 A.2d at 1010. In support of its holding, the Court said that the requirement of *Mayfield* that court delay be unavoidable "must be given a realistic construction. A rigid requirement that the Courts of Common Pleas, particularly in

urban areas with severely crowded criminal and civil dockets, must continually arrange and rearrange their schedules to accommodate the 180 day rule, would be ill-advised.

It may be possible, in an abstract sense, to arrange a crowded court calendar to insure that every criminal defendant is tried within 180 days. However, such a rigid system requires eliminating a realistic mechanism for scheduling civil cases, or giving weight to those who await trial in prison for lack of bail. Finally, trial judges, prosecutors, and defense attorneys would have to be available at all times to try defendants whose 180 days are about to run.

. . . .

. . . Rule 1100 was designed to promote the administration of criminal justice within the context of our entire judicial system, not to render that system hostage to its own closed logic. The goals of efficiency and ease of administration which Rule 1100 serves are worthy; they should not be exalted at the expense of justice. Thus, in interpreting our Rule 1100, we must throw away the stopwatch and pick up the scales of justice. *See, e.g., Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1980) (dissenting opinion, Larsen, J., in which Flaherty, J. joined)."

*Id.,* 502 Pa. at 400–402, 466 A.2d at 1013–1014 (footnote omitted).

 The record in the instant case discloses that Briggman twice caused trial delays. The first trial delay was caused by a defense requested continuance on October 20, 1980 in order to permit additional investigation. The second trial delay was caused by defendant's failure to appear on December 23, 1980. The delay of which defendant now complains resulted from the court's inability to reach the case on February 20, 1981. It is clear from the record, therefore, that the delay in commencing Briggman's trial was not caused by the Commonwealth. Even if it were the District Attorney who determined the order in which

cases were to be called on February 20, 1981—the record does not show that it was—we are unwilling to equate the earlier calling of another case having a three day later run date with a lack of due diligence in the instant case. Cases need not be tried solely and precisely according to age. Although age is a factor to be considered, some discretion regarding the order in which cases are to be called must be left to the trial courts and/or the District Attorney. Other factors, such as the severity of the offense, the availability of witnesses, the availability of counsel, and whether the defendant is incarcerated, must also be considered. *Commonwealth v. Suggs, supra*, 289 Pa.Super. at 56, 432 A.2d at 1048.

■ Here, the Commonwealth had twice been ready to proceed but was prevented from doing so by the defendant. On the third trial date, the record shows that the Commonwealth was again ready to proceed but was prevented from doing so by the inability of the assigned judge to hear the case. Under these circumstances, it cannot be said that the Commonwealth failed to exercise due diligence. Rather, the failure to reach and try the case on February 20, 1981 must be attributed to judicial delay. When the District Attorney requested the earliest possible trial date and the court set the case for trial on April 27, 1981, the requirements of *Mayfield* were met and Judge Sporkin properly granted the Commonwealth's request for an extension.

"Rule 1100 'serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society.' *Commonwealth v. Brocklehurst*, 491 Pa. 151, 153–154, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson*, 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980). *The administrative mandate of Rule 1100 certainly was not*

340

*designed to insulate the criminally accused from good
faith prosecution delayed through no fault of the Com-
monwealth."*
*Commonwealth v. Genovese,* 493 Pa. 65, 69–70, 425 A.2d
367, 369–370 (1981) (emphasis added). See also: *Common-
wealth v. Dunbar,* 503 Pa. 590, 599, 470 A.2d 74, 78 (1983).

Reversed and remanded for consideration of undecided
issues raised in appellant's post-verdict motions. Jurisdic-
tion is not retained.