553 A.2d 458

**COMMONWEALTH of Pennsylvania**

v.

**Thomas H. BRAWNER, Appellant.**

Superior Court of Pennsylvania.

Jan. 23, 1989.

266

Joseph T. Molieri, Jr., Philadelphia, for appellant.

Jeffrey Hellman, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and MONTEMURO and POPOVICH, JJ.

PER CURIAM:

Appellant, Thomas Brawner, appeals from judgment of sentence imposed July 1, 1987 by the Court of Common Pleas, Philadelphia County. He raises five issues on appeal, we address them in the order presented.

On January 26, 1986, at approximately 3:00 A.M., Joseph White, a cab driver, was robbed by his two passengers, who had requested transportation to 19th and Catherine Streets in Philadelphia. Upon arrival at their destination, one of

the passengers placed what appeared to be a gun [1] against White's right cheek and instructed White to "give it up". In response, White handed the passengers his money. The passengers fled the scene after removing White's keys from the ignition and placing them on the sidewalk. White immediately called his dispatcher, told her he had been robbed, gave her his location, and described the appearance of the passengers. Appellant, Thomas Brawner, and Alvin Johnson, who were in the near vicinity of the crime and who matched White's description, were picked up by police who had responded to the call. During a pat down of the appellant, the police recovered a cap pistol from appellant's left coat pocket. The appellant and Johnson were transported to the scene of the crime, where White positively identified first the pistol and then appellant and Johnson. Appellant was subsequently charged with robbery [2], simple assault [3], recklessly endangering another person [4], criminal conspiracy [5], theft [6], receiving stolen property [7], and possession of an instrument of crime.[8] A preliminary hearing was scheduled for January 29, 1986. Because appellant was without counsel on January 29, 1986, counsel was appointed by the court and the preliminary hearing was rescheduled for February 21, 1986, which was the next available date. On February 21, 1986, the appellant was unable to appear because of hospitalization. The appellant was unable to appear at the next two rescheduled preliminary hearing dates, set for March 21, 1986 and April 4, 1986, for the same reason. The preliminary hearing was finally held on April 18, 1986, at which time the appellant was held over for trial. On May 8, 1986, a pretrial conference was held. At that time a continuance until August 4, 1986 was granted

1. What appeared to White to be a gun, was actually a cap pistol.
2. 18 Pa.C.S.A. § 3701.
3. 18 Pa.C.S.A. § 2701.
4. 18 Pa.C.S.A. § 2705.
5. 18 Pa.C.S.A. § 903.
6. 18 Pa.C.S.A. § 3921.
7. 18 Pa.C.S.A. § 3925.
8. 18 Pa.C.S.A. § 907.

due to the unavailability of Johnson's counsel.[9]  On August 4, 1986, appellant's counsel was granted a two day continuance.  On August 6, 1986, the trial judge was not available for trial due to illness.  The case was then relisted for August 11, 1986.  On August 11, 1986, the Commonwealth requested a continuance because a necessary police witness was on vacation.  The court granted the continuance until October 15, 1986, which was the next available date.  On October 15, 1986, and on October 21, 1986 which was the next rescheduled date, the trial judge was not available for trial.  As a result of these delays, the Commonwealth requested and was granted a continuance based on judicial delays until March 28, 1987.  The appellant was finally brought to trial on January 12, 1987.  The appellant's pretrial suppression motion and his motion to dismiss pursuant to Pa.R.Crim.P. 1100 were denied.  The trial proceeded uneventfully until cross-examination of the appellant's witnesses.  The prosecutor during the cross-examination of appellant's sister asked how many times the appellant had been arrested.  Counsel objected and the objection was sustained.  Counsel's motion for a mistrial was denied.  The jury was then instructed to disregard the question.  During the cross-examination of the appellant, the prosecutor asked him, in reference to the cap pistol, "so you don't use it in your robberies, is that the idea?"  Counsel again objected and the court sustained the objection, however, not before the appellant answered the question in the negative.  Appellant's counsel again objected to the prosecutor's actions when, during his closing argument, the prosecutor, referring to the appellant's testimony, declared "anybody is going to try to save their own skin even if it means being less than truthful" and "it (appellant's alibi defense) smells to high heaven.  Rotten, it stinks and its obvious."  Counsel's objections to these closing comments were overruled both times.  The jury convicted the appellant of robbery, criminal conspiracy, and possession of an instrument of crime.  After appellant's post-trial motions were heard and

9. Appellant and Johnson were tried in the same proceeding.

denied, appellant was sentenced to serve an aggregate term of 5 to 10 years imprisonment. This appeal followed.

■ Appellant first argues that the Commonwealth failed to exercise due diligence in bringing him to trial within the 180–day time limit of Pa.R.Crim.P. 1100(a)(2) [10], and therefore, the Commonwealth's petitions to extend the time for trial were erroneously granted. We disagree.

In order to be entitled to an extension under former Pa.R.Crim.P. 1100(c) [11], the Commonwealth must prove by a preponderance of the evidence that it acted with due diligence at the last listing before the amended rundate and any listing thereafter to bring the case to trial. *Commonwealth v. Burke*, 344 Pa.Super. 288, 291–93, 496 A.2d 799,

**10.** Rule 1100. Prompt Trial.
  (a)
    (1) ...
    (2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.
  Pa.R.Crim.P. No. 1100(a)(2).

**11.** Rule 1100. Prompt Trial.
  (a) ...
  (b) ...
  (c)
    (1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.
    (2) A copy of such motion shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon.
    (3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth ‘and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.
    (4) Any order granting a motion for extension shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate.
  Pa.R.Crim.P. No. 1100(c).

801 (1985). The test to determine whether the Commonwealth acted with due diligence is one of reasonableness under the circumstances. *Commonwealth v. Burke,* 344 Pa.Super. 288, 291–93, 496 A.2d 799, 801 (1985). When we review a trial court's ruling, relative to whether the Commonwealth has met its burden of proving due diligence, we consider only the evidence presented at the hearing by the Commonwealth and so much of the evidence presented by the defendant which remains uncontradicted. *Commonwealth v. Yant,* 314 Pa.Super. 442, 445–47, 461 A.2d 239, 241 (1983).

The Commonwealth twice requested an extension of the 180–day Rule. The first time, it did so because a necessary police witness was on vacation. In *Burke,* we held that the trial court properly granted the Commonwealth's petition for an extension of the 180–day Rule based on the unavailability of its police witness, who was on vacation at the time, declaring that: "when witnesses become unavailable toward the end of the Rule 1100 time period—whether through vacation, illness, or other reasons not within the Commonwealth's control—the Commonwealth is prevented from commencing trial within the requisite period despite its due diligence and an extension of time is warranted." *Id.,* 344 Pa.Superior Ct. at 292, 496 A.2d at 801. In the instant case, there was no evidence to establish that the Commonwealth knew that the police officer was scheduled for vacation on that date, nor had the officer received notification that he was to appear in court on October 15, 1986 prior to going on vacation. We therefore find that the trial court properly granted the Commonwealth's first request for extension. The second time, it did so because of the court's inability to schedule the trial prior to the running of the 180 days. In *Commonwealth v. Briggman,* 325 Pa.Super. 333, 472 A.2d 1145 (1985), we declared: "it is by now well settled that a court may grant an extension of time to commence trial under Pa.R.Crim.P. 1100(c) where judicial delay prevents the Commonwealth from bringing a defendant to trial within the mandatory period despite its due diligence." *Id.,* 325 Pa.Superior Ct. at 336, 472 A.2d at 1148. On October 15, 1986,

the judge assigned to the trial was in chambers so the case was continued until October 21, 1986, which was the earliest possible date for trial. Because another trial was still in progress on October 21, 1986, appellant's trial was again continued until January 12, 1987, the earliest possible date for trial. Because the Commonwealth was ready to proceed on October 15, 1986 and October 21, 1986 but was prevented from doing so solely due to judicial delays, we find that the trial court properly granted the Commonwealth's second request for extension.

Next, the appellant asserts that the physical evidence and the identification of the appellant obtained pursuant to the arrest of the appellant should have been suppressed. Specifically, appellant argues that the police did not have probable cause to arrest the defendant. We disagree.

Probable cause for a warrantless arrest exists if the facts and circumstances known to the officer at the time of the arrest would warrant a prudent person in believing that a criminal offense had been committed, and that the suspect was the perpetrator of the offense. *Commonwealth v. Woodson*, 342 Pa.Super. 392, 395, 493 A.2d 78, 79–80 (1985). Before we apply this rule to the facts in the instant case, we reiterate the standard of review for suppression rulings established in *Commonwealth v. Jackson*, 359 Pa.Super. 433, 519 A.2d 427 (1986). In *Jackson* we stated:

> Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.

*Id.*, 359 Pa.Superior Ct. at 436, 519 A.2d at 429 (quoting *Commonwealth v. Cavalieri*, 336 Pa.Super. 252, 254–55, 485 A.2d 790, 791 (1984)). In its written opinion denying the

appellant's motion to suppress, the trial court, in the instant case, stated:

> Applying the law to the facts of the instant case, the existence of probable cause is clear. Within minutes of the robbery, the victim notified police of the incident and not only described his attackers, but described the gun with which he was threatened. Shortly, thereafter and in the immediate vicinity, two suspects were encountered by police who fit the description given. The suspects were then frisked to ensure the safety of the officers and seized was a toy gun which also matched the description given. The suspects were then briefly detained and were unequivocally identified by the victim as those who robbed him. As such, the defendant's contention in this regard is wholly unsupported by the record.

Op. of trial court at 5. We conclude that these factual findings are supported by the record, and therefore, affirm the trial court's denial of appellant's motion to suppress.

█ Appellant next argues that the verdicts of guilty were contrary to the weight of the evidence so as to render the verdicts based thereon pure conjecture.[12] Appellant points to two pieces of evidence in order to prove his assertion. First, he points to what he alleges is a major contradiction in White's testimony. White testified that both robbers had heavy mustaches. White also testified that appellant's mustache at the time of trial was not heavy. According to the appellant, because the police photo taken of appellant on the day of the crime showed that appellant's mustache was either the same as or lighter than the appellant's mustache on the trial date, White contradicted himself, and because of this contradiction, could not identify appellant as one of the robbers. The other piece of evidence to which appellant points in order to prove the verdict was contrary to the weight of the evidence is the amount of money found on appellant and Johnson at the time they were picked up by the police. White testified that approxi-

12. This issue was specifically preserved in appellant's post-trial motions.

mately $30.00, in one dollar denominations, was stolen from him. Although the appellant had no money on his person at the time he was picked up by police, $25.00, most of which were one dollar bills, was recovered from Johnson. Appellant argues that because all of the money allegedly stolen from White was not found on appellant and Johnson, they could not have committed the crime, and therefore, the verdict of guilty as to appellant was contrary to the weight of the evidence. We disagree.

In *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 463 A.2d 1117 (1983), we stated:

> Whether a verdict is contrary to the weight of the evidence is a matter committed to the sound discretion of the trial court. A new trial will be granted on this basis only where the record shows that the verdict was so contrary to the evidence as to shock one's sense of justice and make a new trial imperative in the interests of obtaining justice.

*Id.*, 317 Pa.Superior Ct. at 133, 463 A.2d at 1120. Based on this standard, we find that White's comparison of the heaviness or lightness of the beard of one of his assailants a year after the crime occurred and at trial, and the fact that not all of the money allegedly stolen was found on appellant and Johnson, is hardly evidence which so contradicts the verdicts as to shock our sense of justice. We therefore affirm the trial court's denial of appellant's motion for new trial based on the weight of the evidence.

Appellant next asserts that the evidence was insufficient to establish beyond a reasonable doubt that the appellant committed the crimes of robbery, criminal conspiracy, and possession of an instrument of crime.[13] As in his previous argument, he bases his assertions of insufficiency on White's testimony about the heaviness of the appellant's beard and the amount of money found on the appellant and Johnson. Our standard of review for sufficiency of the

13. Again, this issue was specifically preserved in appellant's post-trial motions.

evidence arguments is that which we asserted in *Ruffin.* There we stated:

> In reviewing the sufficiency of the evidence, we are required to view the evidence, and all permissible inferences to be drawn therefrom, in the light most favorable to the Commonwealth, as verdict winner. The test is whether, taking as true the evidence most favorable to the Commonwealth, together with all reasonable inferences therefrom, the evidence is sufficient to prove appellant's guilt beyond a reasonable doubt.

*Id.,* 317 Pa.Superior Ct. at 129, 463 A.2d 1117. Appellant and Johnson, who fit the description of the robbers and were found in the near vicinity of the crime within minutes after it occurred, were identified by White as his assailants. White also identified the cap pistol, which was found on appellant, as the one used in the robbery. In addition, White testified that most of the money stolen from him consisted of one dollar bills. Johnson, when he was picked up by police, had on his person $25.00 mostly consisting of one dollar bills. These are facts upon which the jury could have relied in reaching its determination of guilt. Having reviewed the record in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to sustain beyond a reasonable doubt appellant's guilty verdicts.

Appellant's final argument is that he is entitled to a new trial due to the prosecutor's misconduct during the cross-examinations of appellant and his sister and during closing argument. We disagree.[14]

Comments by a prosecutor do not constitute reversible error, unless the unavoidable effect of the comments is to so bias and prejudice the jury against the defendant as to render it incapable of objectively weighing the evidence and

---

**14.** We note with considerable dismay and alarm the increasing number of appeals in which the Philadelphia District Attorney's Office is accused of prosecutorial misconduct, especially with regard to the prosecutor in the instant case. Although we are unwilling to designate his conduct in this case and on these facts as that which requires reversal, we strongly disapprove of such conduct.

delivering a true verdict. *Commonwealth v. D'Amato,* 514 Pa. 471, 489–91, 526 A.2d 300, 309 (1987). Our standard of review for appeals based on prosecutorial misconduct is clearly set out in *D'Amato,* wherein our supreme court declared:

> Whether this standard [for prosecutorial misconduct] has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion.

*Id.,* 514 Pa. at 491, 526 A.2d at 310 (quoting from *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968)).

■ Appellant points to four instances of misconduct by the prosecutor, which he claims unduly prejudiced the jury against him. The first occurred when the prosecutor asked the appellant's sister on cross-examination how many times the appellant had been arrested. This question was obviously posed in response to defense counsel's elicitation from appellant's sister that appellant had been arrested only once in 1986. Although improper, the question did not so bias the jury as to render it incapable of delivering a true verdict. Because of defense counsel's prompt objection, which was sustained, the jury never got to hear the answer to the question. In addition, the jury was properly instructed to disregard the question. These measures were sufficient to dispel any prejudice toward the appellant which may have been created by the prosecutor's question.

■ The second alleged incident of prosecutorial misconduct occurred when the prosecutor, in reference to the cap pistol, asked the appellant "So you don't use it in your robberies, is that the idea?" Defense counsel again objected, but not before the appellant responded to the question in the negative. The objection was sustained. Although it is possible that the jury may have inferred from this question that the appellant had committed other robberies, it is very unlikely, especially in light of the court's instruction at

the outset of the case that questions standing alone are not evidence but answers to questions are evidence. We therefore find that the defendant was not prejudiced by this comment to such an extent that the jury was incapable of delivering a true verdict.

■ The third alleged incident of prosecutorial misconduct occurred during closing argument, when the prosecutor, referring to the veracity of the appellant's testimony, asserted that "anybody is going to try to save their own skin even if it means to be less than truthful." It is well established that a prosecutor may not inject his personal opinion of appellant's credibility into evidence. *See Commonwealth v. Potter*, 445 Pa. 284, 287, 285 A.2d 492, 493 (1971). However, we conclude that in making this comment, the prosecutor was not stating his opinion but was simply reminding the jury that in assessing the appellant's credibility it should not neglect to consider the appellant's interest in the outcome of the case. In addition, we note that the trial court also instructed the jury prior to deliberation that what the attorneys said in their summation is not evidence.

■ The fourth comment, like the third, occurred in closing argument, when the prosecutor, referring to the appellant's alibi, stated "it smells to high heaven. Rotten, it stinks and its obvious." Initially we note that a prosecutor must be afforded reasonable latitude in prosecuting his case and presenting his arguments with logical force and vigor. *Commonwealth v. D'Amato*, 514 Pa. 471, 489–91, 526 A.2d 300, 309 (1987). In addition, not every intemperate or uncalled for remark by the prosecutor requires a new trial. It must be evaluated in context to determine the prejudicial effect. *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978). After reviewing the prosecutor's comment in the context in which it was made, we conclude that its effect was not such that the jury was incapable of delivering a true verdict. We therefore hold that the trial court

did not abuse its discretion when it denied the appellant's post trial motions based on prosecutorial misconduct.

Judgment of sentence affirmed.